Livingston, J.,
 

 after stating the facts of the case, delivered the opinion of the court, as follows :—
 

 ’'■'From the manner in which the appellants have argued this cause, it does not appear that they are very sanguine in their f xpec- L tations of our reversing the decree of the circuit court, on the evidence on which that court and the district court proceeded ; but that their chief hope
 
 *279
 
 is derived from the further proof which they have it in their power to produce, provided an opportunity be afforded them for that purpose. Except as to the property claimed by Mr. Penniman and Mr. McGregor, this court does not perceive how the circuit court could have done otherwise, upon the proof before it, than confiscate the cargo of the St. Lawrence, as prize of war. Without meaning to decide, at present, on the right of an American citizen, having funds in England, to withdraw them, after a declaration of war, or of the latitude which he may be allowed in the exercise of such a right, if it exists, we think the evidence would have justified the court in considering this property as belonging to enemies of the United States.
 

 The St. Lawrence had gone to England, after the war was known, and had sailed from a British port, nearly one year after war had been declared : she was loaded in the country of the enemy, and by persons carrying on trade there : she was furnished with a British license, which extended both to British and American property : and the bills of lading, not being in a very common form, were well calculated to excite suspicion. But these circumstances, strong as they are, might, if everything had been fair, have been so explained as to have convinced the court that the property was truly American. Was this done, or even attempted ? If we look at the conduct of the master and the claimants, we find them both acting in a way which left the court no other safe conclusion but that the cargo of the St. Lawrence was enemy property. The master, instead of delivering to the captors, or bringing into court the letters to the consignees, which, no doubt, covered invoices and bills of lading, lets us know, in a way not to be misunderstood, that he had delivered or sent them to the parties to whom they were addressed. Taking his examination, with the usual course of biisiness, which is to accompany every shipment with a letter, no doubt can remain, that such letters were not only on board, but that they have been regularly received by the respec*4.4.91 ^ve Consignees ; for it is not pretended by the master, that they ■* were taken from him by the captors. Here, then, is not only a subduction of very important papers by the master, but an acquiescence in such conduct, on the part of the consignees,
 
 and-
 
 a continued suppression of the same papers, to this day. The only proof, then, which the court had of the interest of the claimants, except of Mr. Penniman’s, the master’s and Mr. McGregor’s, is in the claim of Mr. Ogden,' who states, that he is not acquainted with their concerns, but believes they had an interest in the cargo ; without, however, attempting to designate the packages belonging to either of them. The court below, therefore, might fairly consider the claimants as having not only failed in making out a legal title to the property, but as concealing papers which would have shown a title elsewhere.
 

 But if there was a defect of proof below, it is thought the claimants . are entitled to time for further proof ; and that, if this be allowed, they will be able to show that the property in question was purchased, with American funds which were in England previous to the war, and that the claimants were the true and
 
 bond fide
 
 owners thereof. It is certainly not a matter of course, in this court, to make an order for further proof. When the parties are fully apprised of the nature of the proof which their case requires, and have it in their power to produce it, an appellate court should not readily listen to such an application : but when it appears that the parties who ask this indulgence have most pertinaciously withheld from the court, letters
 
 *280
 
 and other documentary testimony, which must be supposed, in this particular case, to have been in their possession, they come with a very ill grace to ask for any further time to make out their title. But if we examine the affidavits which have been made to obtain further time, we shall find them all silent as to the papex-s which they must have received by the St. Lawrence ; for in not one of them is a letter of that kind, or an invoice, mentioned ; nor do they deny that such letters or invoices were reeeiAred by them. Under such circumstances, this court thinks that it cannot, consistent with the circumspection with Axdiich such applications ought always to be received, allow the appellants time for further proof. The master’s adventure, it is said, has been given up.
 

 *Of Mr. Peniman’s claim the court thinks more favorably. In the claim which he filed personally, he not only swears that the prop- L erty belongs to him, but states very particularly how and when it was purchased. He states, further, that the original invoice and other documentary evidence were at Baltimore; and in the affidavit made by Mr. Campbell, during the present term, there is such a full and distinct history given of this whole tx-ansaetion, founded upon original letters and bills of exchange, that it is impossible to harbor one moment’s doubt, that the five chests of merchandise claimed by Mr. Penniman, did, at the time of shipment, and long before, belong to him. To this affidavit is also annexed the oi'iginal letter and invoice which he received by the St. LaAvrence, which must dissipate every douht on the question, if any had previously existed. Whex-e so strong a case is made out, the court is willing to impute to accident ox-mistake the non-production of these papers below. Pex-haps, Mx\ Penniman thought he did sufficient, in stating they were in his possession. Cex-tain it is, he could have no motive for suppressing papers which Avould have established so conclusively his title to the merchandise Avhich he claimed. The court, therefore, allows him until next term, to make proof, by affidardt and the production of documents, of his right to the property claimed, at the time of its shipment at Livex-pool; and the same indulgence is allowed to the captors.
 

 In regard to the claim of McGregor to a part of the cargo, there is also some difference between his case and that of many others of the claimants. He SAvears positively to his interest, but that no invoice was delivered to him by the shippers, Ogden, Richards & Selden. Ogden also swears to the interest of Mr. McGregor-. Perhaps, this testimony is sufficient to satisfy a court, as it did satisfy the district court, that the property really belonged to Mr. McGregor. But if that be the case, other questions will arise, of too much importance to be decided on the last day of the term, and when the court is not full. Whether an American citizen has a right to -withdraw his funds from the country of a belligerent, after a war ; or, if he have, whether he have a right to charter a vessel for that purpose ; and, if he may go thus fax-, whether he may bx-ing British *goods, on freight, to this country, p,. without affecting thereby the safety of his oxvn goods ; ax-e questions L which the court does not noxv decide, and will, therefox-e, suspend, at present, giving any final opinion on the claim of Mr. McGregor to a part of the cargo ; who, in the meantime, is also at liberty to make further proof on the same points with Mr. Penxximan ; the captors having the same right.
 

 It may be well doubted, whether Mr. Ogden and Mr. McGregor have
 
 *281
 
 any title to the St. Lawrence : but whether she belong to them or to Messrs. Dickey and Thompson, her fate seems necessarily involved in the decision of
 
 The Rapid,
 
 which was made this term. She went to England, since the war-, and is taken, bringing a cargo from that country. If the whole of the cargo had belonged to Mr. McGregor, or any other American returning with his property to the United States, the court means not to say, whether it would or would not have been cause of forfeiture : but when we find but a small portion of the cargo in that predicament, there can be no escape for her. The St. Lawrence was certainly guilty of trading with the enemy ; and being taken on her way from one of his ports to the United States, she is liable, on that ground, to be confiscated as prize of war, to whomever she might belong at the time.
 

 Upon the whole, the sentence of the circuit court is affirmed in all its parts, with costs ; except so far as it condemned those portions of the cargo which were claimed by Mr. Penniman and Mr. McGregor, respecting which this court will advise until the next term.
 
 [1]
 

 [1]
 

 For a further decision on this claim, see 9 Cr. 120.